IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRIDGET AMANDA WINKS, )
)
)
)
Plaintiff, )
)
v. ) Civil Action No. 3:20-cv-420–HEH
)
VIRGINIA DEPARTMENT OF )
TRANSPORTATION, )
)
Defendant. )

**MEMORANDUM OPINION**
**(Granting Defendant's Motion for Summary Judgment)**

Plaintiff Bridget Amanda Winks ("Plaintiff" or "Winks") filed this suit against her employer, the Virginia Department of Transportation ("Defendant" or "VDOT") alleging that it violated the Equal Pay Act, 29 U.S.C. § 206(d), *et seq.*, by paying her less than certain male employees. (3d Am. Compl., ECF No. 56.) The Court now turns to Defendant's Motion for Summary Judgment (the "Motion") (ECF No. 60) filed on October 15, 2021. The parties filed memoranda supporting their respective positions and the Court heard oral argument on November 17, 2021. For the reasons set forth below, the Court will grant the Motion for Summary Judgment.

**I. STANDARD OF REVIEW**

Pursuant to Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence

presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 Fed. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate . . . ." *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). "[T]here must be 'sufficient evidence favoring the

2

nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007) (citing *Anderson*, 477 U.S. at 249–50). When applying the summary judgment standard, courts must construe the facts in the light most favorable to the nonmoving party and may not make credibility determinations or weigh the evidence. *Holland*, 487 F.3d at 213.

## I. BACKGROUND

As required at the summary judgment stage, the Court resolves all genuine disputes of material fact in favor of the nonmoving party and disregards those factual assertions that are immaterial. *Anderson*, 477 U.S. at 248, 255. Applying this standard, the Court concludes that the following narrative represents the facts for purposes of resolving Defendant's Motion.[1]

VDOT is a state agency of Virginia primarily responsible for building and maintaining roadways across the state. (SUMF ¶ 1, Def.'s Mem. Supp., ECF No. 61.) VDOT maintains a headquarters (the "Central Office") in Richmond, Virginia. (*Id.* ¶ 2.) It also manages nine regional offices in districts across the state. (*Id.* ¶ 3.) The unique physical and operational features of each district impact the nature of its construction, maintenance, and oversight projects. (*Id.*)

---

[1] Local Civil Rule 56 requires the movant for summary judgment to include a Statement of Undisputed Material Facts ("SUMF") in its brief. E.D. Va. Local Civ. Rule 56. In turn, the nonmovant must list which facts she disputes in her brief. *Id.* Because, in this case, the parties agree that many facts are undisputed, the Court will cite to the SUMF contained in Defendant's Memorandum in Support (ECF No. 61) whenever practicable. When material facts are disputed, not mentioned in the SUMF, or especially important, the Court will cite directly to evidence contained in the record.

3

VDOT administers the National Pollutant Discharge Elimination System ("NPDES") with respect to all of its transportation projects. (*Id.* ¶ 19.) NPDES requires VDOT to monitor stormwater systems to prevent the discharge of pollutants from road construction sites. (*Id.* ¶ 19.) In 2017, VDOT created the NPDES Coordinator position to expand its compliance efforts in each of its nine districts. (*Id.* ¶¶ 20–25.) The Central Office created a uniform job description for NPDES Coordinators. (*Id.*; *see* NPDES Job Description, ECF No. 61-12.)

After creating the NPDES Coordinator position, VDOT hired Coordinators in each district. To a limited extent, the Central Office participated with district managers and Human Resources staff in the interview and hiring processes. (Swanson Dep. at 11:9–12, ECF No. 62-5.) The Central Office also provided initial training for all new NPDES Coordinators. (Guercia Dep. at 43:25–44:1–3, ECF No. 62-12.) Otherwise, each district interviewed and hired NPDES Coordinators independently of each other and the Central Office.

Additionally, local districts choose salaries for NPDES Coordinators independently from the Central Office but were required to comply with two salary policies published by the Central Office. (SUMF ¶ 4.) First, the Salary Administration Plan enumerates thirteen "Pay Factors" that district managers can consider in making pay determinations. (*Id.* ¶ 7.) While managers need not consider all thirteen factors, they must consider those that are "applicable." (*Id.* ¶ 8.) Second, VDOT's Market Based Pay Program ("MBPP") uses local salary data to calculate a minimum, midpoint, and maximum salary for the specific position being evaluated. (Market Based Pay

Guidelines, ECF No. 61-5; Litchford Decl. ¶¶ 9–12, ECF No. 61-1.) District managers must set salaries within the minimum and maximum ranges of the MBPP.[2] (SUMF ¶ 11.)

On a day-to-day basis, NPDES Coordinators travel to VDOT construction projects in their district, physically inspect the sites for environmental issues, and consult with VDOT contractors to ensure compliance at those sites. (*Id.* ¶¶ 25, 39, 40.) These duties may vary in scope between districts due to inherent differences in geography and topography, as well as the presence of large urban areas and major interstates. (*Id.* ¶¶ 37, 43, 45.) There is only one NPDES Coordinator per district and they only inspect facilities within their own district. (Winks Dep. at 54:13–15, 86:15–20, ECF No. 61-13.) NPDES Coordinators report to supervisors within their districts, not the Central Office. (*See* SUMF ¶ 65; Jackson Dep. at 9:4–6, ECF No. 62-23; Guercia Dep. 18:20–25.) There is no evidence in the record that the Central Office exercises any control over the day-to-day duties of the NPDES Coordinators.

On January 25, 2018, VDOT hired Winks as the NPDES Coordinator for the Lynchburg District. (Winks Personnel Action Worksheet ("PAW"), ECF No. 61-19.) Prior to accepting the NPDES Coordinator position, she worked for the Virginia Department of Environmental Quality as a stormwater compliance specialist with a salary of $50,744. (SUMF ¶ 66.) The MBPP required Winks' starting salary to be between

---

[2] Plaintiff argues that the MBPP could not possibly be accurate because the NPDES Coordinator position did not exist until around the time that VDOT hired Winks. (Pl.'s Mem. Opp. at 3, ECF No. 62.) Plaintiff misunderstands what the MBPP is based on. The record shows it is not based on past salaries of NPDES Coordinators, which admittedly did not exist, but on salary data from *other* similar jobs in the community. (Market Based Pay Guidelines.) Plaintiff offers no evidence to contradict that and thus, what the MBPP is based on and how it factored into district manager's salary decisions is undisputed.

5

$60,113 to $105,811. (*Id.* ¶ 71.) The Lynchburg District set her initial salary as an NPDES Coordinator at $60,893.[3] (*Id.* ¶ 62.) After three years at VDOT, Plaintiff's salary is now $75,846. (*Id.* ¶ 77.)

Plaintiff relies on two comparators to make her EPA claim: Derrick Dotson and Jason Hartman.[4] (*Id.* ¶ 18.) VDOT hired Dotson as an NPDES Coordinator for the Bristol District on February 10, 2018 with a starting salary of $70,246. (*Id.* ¶ 78; Dotson PAW, ECF No. 61-21.) Similarly, VDOT hired Hartman as an NPDES Coordinator on December 25, 2017. (SUMF ¶ 86; Hartman PAW, ECF No. 61-23.) Hartman's starting salary was $75,807, the same as his previous salary as an engineer with VDOT. (SUMF ¶ 90.) Different managers in different districts made the decision to hire Winks, Dotson, and Hartman independently of each other. (*See Id.* ¶ 4; Winks PAW, Dotson PAW, Hartman PAW.)

## II. DISCUSSION

The Equal Pay Act prohibits employers from discriminating on the basis of sex "by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1).

---

[3] Because Winks' starting salary would be more than a 15% increase over her previous salary, the Central Office had to approve it, which it did. (SUMF ¶ 73–75.)

[4] Plaintiff mentions other comparators in her Third Amended Complaint, but only compares herself to Dotson and Hartman at the summary judgment stage.

6

Thus, Plaintiff must first prove her prima facie case by showing three elements: "(1) [VDOT] paid higher wages to an employee of the opposite sex who (2) performed equal work on jobs requiring equal skill, effort, and responsibility (3) under similar working conditions." *Spencer v. Va. State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019); *EEOC v. Md. Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). Such a showing is typically demonstrated by a "factor-by-factor" comparison to a comparator of the opposite sex. *Houck v. Va. Polytechnic Inst. and State Univ.*, 10 F.3d 204, 206 (4th Cir. 1993). Plaintiff may only compare her wages to employees in the same "establishment". 29 U.S.C. § 206(d)(1); *see Collins v. Landmark Mil. Newspapers, Inc.*, No. 2:06cv342, 2007 WL 2301549, at *12 (E.D. Va. Aug. 6, 2007). Defendant concedes that Plaintiff's comparators, Dotson and Hartman, are paid higher wages but argues that Plaintiff and her comparators did not work at the same "establishment."[5]

Federal regulations define an establishment, as used in the Equal Pay Act, as "a distinct physical place of business" and note that "each physically separate place of business is ordinarily considered a separate establishment." 29 C.F.R. § 1620.9(a). However, "unusual circumstances may call for two or more distinct physical portions of a business enterprise to be treated as a single establishment." *Id.* § 1620.9(b). These unusual circumstances could exist where a central administration hires all employees, sets wages, assigns work locations, and reassigns employees among work locations. *Id.*

---

[5] Defendant also argues that the comparators did not perform equal work as Plaintiff. However, since the establishment issue resolves the case, the Court need not reach that issue or the issue of whether Defendant's affirmative defenses block Plaintiff's claim.

Courts before and after the adoption of 29 C.F.R. § 1620.9 have considered similar factors in determining the scope of an establishment. *Collins*, 2007 WL 2301549, at *12 (after § 1620.9); *Grumbine v. United States*, 586 F. Supp. 1144, 1147–48 (D.D.C. 1984) (before § 1620.9); *Brennan v. Goose Creek Consol. Indep. Sch. Dist.*, 519 F.2d 53, 56–58 (5th Cir. 1975) (before § 1620.9); *Winther v. City of Portland*, No. 92-35590, 1994 WL 118167, at *1–3 (9th Cir. 1994) (before § 1620.9); *AFSCME, AFL-CIO v. Nassau Cty.*, 609 F. Supp. 695, 705–06 (E.D.N.Y. 1985) (before § 1620.9).

VDOT contends that its nine regional districts each constitute a separate establishment and, therefore, Winks cannot compare herself to NPDES Coordinators in other regions. Winks argues the opposite. The Court agrees with VDOT. Each regional district undoubtedly embodies a "distinct physical place of business." 29 C.F.R. § 1620.9(a). After all, the district offices are, in some cases, separated by more than a hundred miles. (*See* VDOT District Maps, ECF No. 61-16.); *see Price v. N. States Power Co.*, 664 F.3d 1186, 1195 (8th Cir. 2011) (finding that power plants 75 miles apart are separate establishments).

Moreover, the Court sees no "unusual circumstances" that would otherwise warrant combining VDOT's regional districts into one establishment. *Id.* § 1620.9(b). VDOT's Central Office does not assign or reassign NPDES Coordinators among the districts, and it exercises little if any control over the day-to-day functioning of districts or the NPDES Coordinators. The Central Office's role in hiring and setting wages for NPDES Coordinators is also minimal. It wrote the job description for the role, published guidelines for each district to follow when setting wages, had an official sit-in on

8

interviews, signed off on each new employee at a high-level, and conducted an initial statewide training.[6] But conspicuously absent from the record is any evidence that VDOT Central Office participated in the hiring or salary determinations beyond being a rubber stamp to the decisions of the regional districts.

The *districts*, not the Central Office, made the initial determination of who to hire and what to pay. The *districts*, not the Central Office, control the duties and assignments of the NPDES Coordinators on a daily basis. Each district functions as a largely independent unit within VDOT, making its own decisions with only high-level oversight from the Central Office. In scenarios with similar facts, courts have repeatedly found that regional offices could not constitute a combined single establishment. *See, e.g., Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1017 (11th Cir. 1994) (holding that offices are separate establishments where they choose salary within broad range, interview candidates, and maintain general control); *Price*, 664 F.3d at 1195 (holding that power plants are separate establishments where they did not have employees transfer between them, and have separate supervisors); *Winther*, 1994 WL 118167, at *3 (holding that two public emergency offices are not a single establishment where they cannot transfer employees between offices and set salaries separately).

---

[6] Christopher Swanson, who worked in VDOT's Central Office, says that the Central Office "participated in the efforts" to interview candidates for the NPDES Coordinator positions. (Swanson Dep. at 11:9–12.) Both parties elaborated on this by claiming that someone from the Central Office sat in on NPDES Coordinator interviews. However, neither party points to any evidence that the Central Office participated in any greater way.

The facts before the Court starkly contrast with those where courts did find unusual circumstances exist. Take, for example, the *Brennan* case out of the United States Court of Appeals for the Fifth Circuit. 519 F.2d at 53. There, the question was whether an entire school district, rather than each individual school, could be classified as an establishment. *Id.* at 56. The school district hired janitors for every school, assigned and reassigned them among the schools, set their duties and responsibilities, and set their wages. *Id.* Given these facts, the Fifth Circuit concluded that the school district embodied a single establishment. *Id.* In this case, on the other hand, VDOT's Central Office does not assign and reassign NPDES Coordinators among districts, does not hire them directly, and does not set their duties or wages beyond high-level oversight.

Plaintiff argues that the *Grumbine* case compels a different conclusion, but a close reading fails to support that assertion. In *Grumbine*, the D.C. District Court found that the Customs Service as a whole, rather than each regional office, was an establishment for purposes of the Equal Pay Act, because the Customs Service Central Office directly supervised the regional field offices and assigned work to each region. 586 F. Supp. at 1151–52. In deciding the establishment issue, the court considered "the [degree] of centralized control" in the central office, "the work performed" in regional offices, and "the position description under which the plaintiff operated." *Id.* at 1151. Of course, these factors are substantially similar to the factors mentioned in 29 C.F.R. § 1620.9 which the Court considered above. And again, the facts in this case are easily

distinguishable. The Central Office did not directly supervise the NPDES Coordinators nor did it assign work to them.[7]

This Court has been unable to unearth any persuasive authority supporting Plaintiff's contention that a conglomerate of regional offices constitutes one establishment under the Equal Pay Act. *See, e.g., Grumbine*, 586 F. Supp. at 1152; *Brennan*, 519 F.2d at 56; *Marshall v. Dallas Indep. Sch. Dist.*, 605 F.2d 191, 193–94 (5th Cir. 1979) (similar facts as *Brennan*); *Cf. EEOC v. Enoch Pratt Free Libr.*, 509 F. Supp. 3d 467, 477–78 (D. Md. 2020) (allowing comparators from different libraries within the same administration because centrally controlled and assigned). Based on the record at hand, this Court cannot find that VDOT's regional districts can collectively be considered one establishment under the Equal Pay Act. Thus, Dotson and Hartman, who work in separate regional districts from Winks, are not valid comparators.

Even if Plaintiff's comparators did work at the same establishment, she must prove that the comparators "performed equal work on jobs requiring equal skill, effort, and responsibility." *Spencer*, 919 F.3d at 203. Because the Court finds that none of Plaintiff's proposed comparators worked at the same establishment, it need not decide whether the comparators otherwise performed equal work. Nor must the Court at this

---

[7] Based on *Grumbine*, Plaintiff also argues that the scope of an establishment under the Equal Pay Act is different for public rather than private employers generally. (Pl.'s Mem. Opp. at 11); *Grumbine*, 586 F. Supp. at .1148, 1149 n. 24. This argument does not hold water. The Court sees no substantial difference in the factors that courts have considered when deciding the establishment issue in cases involving public rather than private employers. *Grumbine*, 586 F. Supp. at 1151; *Brennan*, 519 F.2d at 56; *Marshall*, 605 F.2d at 193–94; *Winther*, 1994 WL 118167, at *3.

stage decide whether VDOT's affirmative defenses block Plaintiff's claim as a matter of law.

## III. CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 60) will be granted.

An appropriate Order will accompany this Memorandum Opinion.

                            /s/
                            Henry E. Hudson
                            Senior United States District Judge

Date: Nov. 30, 2021
Richmond, Virginia